IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CHRISTOPHER S. SIMMONS                                          PLAINTIFF

V.                                          CIVIL ACTION NO. 1:19-CV-38-SA-DAS

MIKE FAIR, TRACEY BARNETT, and
TOWN OF SHANNON, MISSISSIPPI                                    DEFENDANTS

ORDER AND MEMORANDUM OPINION

Christopher Simmons was arrested on November 4, 2018 and charged with failure to comply with the orders given by Shannon, Mississippi Officers Mike Fair and Tracey Barnett. Simmons filed his Complaint [1] on February 20, 2019, claiming that the Defendants violated the Fourth Amendment and, in the alternative, the First Amendment when they arrested him. The Plaintiff also claims that the Town of Shannon, Mississippi, is liable for failing to properly train its officers. Currently before the Court are the Defendants' Motions to Dismiss or in the alternative Summary Judgment [9, 23] seeking dismissal of the Plaintiff's claims. The issues are fully briefed and ripe for review.

*Facts[1] and Procedural History*

Around midnight on November 4, 2018, Christopher Simmons was at a house in Shannon, Mississippi, with his friends Brandon Howell and Kurt Mathews. While inside, the three men noticed a police strobe light shining into their cars and the house. They exited the house and were approached by Officers Mike Fair and Tracey Barnett who immediately began to inquire about the

---

[1] The Defendants attached the Police Dash Camera video [9-2] and the Police Body Camera video [9-3] to their Motion to Dismiss [9]. The Court reviewed and consulted both exhibits in analyzing qualified immunity. Consequently, the Defendants' Motion to Dismiss [9] is hereby converted to one of Summary Judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure. FED. R. CIV. PRO. 12(d).

1

dog remaining in the car outside and specifically which one of the men were driving the car fifteen minutes ago.

Prior to arriving at the house, Simmons was riding as a passenger in a black Honda driven by his friend, Brandon Howell. As the two men were traveling to Howell's house located at the corner or Highway 278 and Johnson Avenue, Officer Mike Fair claims he noticed a black Honda speeding.[2] As Simmons and Howell proceeded to the house, Officer Fair began his pursuit of the car but never initiated his blue lights. According to the dash camera footage, Officer Fair drove for approximately four minutes during his pursuit. There is no evidence that the Plaintiff or Howell knew that Officer Fair was following them. Officer Fair claims that during his search, the black Honda disappeared. As Officer Fair continued to investigate the car's whereabouts, he claims that he noticed "fresh tire marks" in the grass leading to a house with a black Honda and a pick-up truck parked outside.[3] Officer Fair shined his patrol car spotlight on the Honda and noticed a dog in the car. Believing that he had finally located the same black Honda he initially saw, Officer Fair drove his patrol car closer to the house and turned on his blue lights.

Simmons exited the house along with Howell and Kurt Mathews. By this time, both Officers Fair and Tracey Barnett were on the scene. Officer Fair immediately asked why the dog was left inside the car. One of the men responded, "it's his dog, it's his house." Officer Fair approached Brandon Howell and asked about the driver of the car and how long it had been since he drove the car. Brandon Howell admitted that he drove the car with Seth Simmons as the passenger about thirty minutes ago. Officer Fair disagreed stating that it was only about fifteen minutes ago. After further disagreement about the timeline of events, Officer Barnett retreated to the patrol car to review the dash camera footage.

---

[2] Officer Fair's claim that the car was speeding is not corroborated by any facts or evidence.
[3] The "fresh tire marks" are visible on the dash camera footage.

Officer Fair continued to question the men until he decided to join Officer Barnett at the patrol car. Before he left the men, he instructed them to remain where they were. In particular, at 3:23 of the body camera footage, Officer Fair tells Simmons "you stay back over there . . . get back over there . . . I don't give a damn if you're Tupelo Police or not, you stay over there."

Once Officer Fair returns to the patrol car, he states to Barnett, "that Simmons dude, he's a smart-ass motherfucker . . . that's that car Tracey, I'm telling ya." He continues, "I never got a chance to light him up with my blues." Barnett asks, "where did you get behind him at." Fair answers "when I was on North Curtis . . . I seen him whip down Shackelford . . . I could barely even keep my eyes on his damn lights and shit." Officer Barnett then remarks that he "smelled weed." Officer Fair states, "whoever was driving that motherfucking car ran from me . . . he seen me coming for him and he took off." Referring to Simmons, Officer Fair says "that motherfucker is Tupelo Police? He ain't much of a police officer . . . he lives a bad life."

Officer Fair claims that during their review of the footage, Simmons began to approach the police car.[4] At 6:14 of the body camera footage, Fair asks Simmons "What do you need? You were asked to stay over there . . . you're asked to stay over there and go over there now." Simmons responds, "what are we doing." Officer Barnett answers, "I'm looking at the video." Fair commands Simmons to "go back over there." As Simmons continued to inquire, Fair states "take your ass over . . . put your hands behind your back." Officers Fair and Barnett both attempt to bend Simmons' arm in order to handcuff him. Officer Barnett grabs Simmons' left arm and says, "put your hands behind your back before I light your ass up." Officer Fair yells "bend your fucking hand." Simmons says to the officers "this is pretty ridiculous . . . I just walked over here to ask you

---

[4] Because of the angle of the video, Simmons is out of the frame and is not visible until the officers are attempting to handcuff him.

a question." The officers restrained and handcuffed Simmons. Officer Fair tells him "you're interfering right now brother." Once detained, the Officers initiated a search of Simmons' person.

Simmons filed his Complaint [1] on February 20, 2019, alleging that the Defendants, Mike Fair and Tracey Barnett, violated his Fourth Amendment or, in the alternative, First Amendment rights under the United States Constitution when they arrested him without adequate probable cause. The Plaintiff later filed an Amended Complaint [21] adding the Town of Shannon as a defendant claiming that its failure to properly train the officers led to the alleged constitutional violations. The Defendants filed two Motions to Dismiss or in the alternative for Summary Judgment [9, 23] arguing that they are immune from suit under the qualified immunity doctrine and that even if the Court found that the officers are liable in their individual capacity, the Town of Shannon could not be subject to liability under Section 1983 on the theory of *respondeat superior*. Because both pending Motions [9, 23] are related, the Court will address both in this opinion.

*Discussion and Analysis*

I.  *Qualified Immunity*

In their Motion, the Defendants argue that they are entitled to qualified immunity and that the Plaintiff's claims should be dismissed. "Qualified immunity is a judicially created affirmative defense which protects state or local officials sued in their individual capacity under 42 U.S.C.A. § 1983." 59 Am. Jur. Proof of Facts 3d 291 (2019).

> [It] balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government officials' error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

*Groh v. Ramirez*, 540 U.S. 551, 567, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004) (KENNEDY, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978) for the proposition that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law"). Qualified immunity is "an immunity from suit rather than a mere defense to liability. . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

Once qualified immunity is asserted as an affirmative defense, "the plaintiff has the burden to negate the assertion of qualified immunity." *Collier v. Montgomery*, 569 F.3d 359, 370 (5th Cir. 2009). In order to resolve a qualified immunity dispute, courts employ two factors: First, whether the plaintiff "has adduced sufficient evidence to raise a genuine issue of material fact suggesting [the defendants'] conduct violated an actual constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Second, the Court must "consider whether [the defendants'] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id*. The Court has discretion to address either step first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).[5]

a. *Constitutional Violation*

The Plaintiff claims that the officers lacked probable cause when they arrested him for disorderly conduct, thereby violating his First and/or Fourth Amendment rights. In particular, Simmons argues that the Defendants cannot establish that he had "intent to provoke a breach of peace. . ." which is required by state statute. *See* MISS. CODE ANN. § 97-35-7(1). The Defendants

---

[5] In their memorandum in support of their Motion to Dismiss, the Defendants cited a considerable amount of cases appearing to warn this Court about the reversal rate of district courts that deny qualified immunity. It is worth acknowledging that while this Court is bound by the precedent of higher courts, the Court's concern is more focused on administering justice in accordance with Fifth Circuit and Supreme Court precedent, not reversal statistics.

argue that the Court is only bound to determine whether the officers had "arguable probable cause" to arrest the Plaintiff and with such a low standard, they argue that the Court could easily find that there was no violation of Simmons' constitutional rights.

The Court will address the Fourth Amendment claim first. Under the Fourth Amendment, an arrest must be based on probable cause, which exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996) (citations omitted). The alleged offense here is disorderly conduct pursuant to section 97-35-7(1) of the Mississippi Code. It states that a person is guilty of failure to comply or disorderly conduct if they

> . . . with the intent to provoke a breach of peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer.

MISS. CODE ANN. § 97-35-7(1).

The Defendants contend that Simmons' failure to comply with the officers' numerous commands to "stay over there" is sufficient probable cause to justify Simmons' arrest. In support thereof, the Defendants cite to Simmons' conduct on the video footage. Throughout the footage, there are several commands given by the officers to the three men to remain in a certain location while the officers proceeded to review the camera footage. The officers claim that Simmons disregarded those commands and as a result was arrested. Simmons, however, argues that the video does not confirm whether he complied or not because he was not visible throughout a majority of the video footage. Simmons adds that the audio and video demonstrates that he was not given any time to obey the order that immediately preceded his arrest. Based on the Court's review of the

6

camera footage, although Simmons is not visible throughout most of the video, he is visible immediately before he was arrested. At that point, Simmons was proximate to the patrol car even after being instructed to remain in his previous location. Thus, there is sufficient evidence to conclude that the officers were directing their commands towards Simmons and that Simmons failed to comply with those commands.

The next question is whether the officers had probable cause to believe that Simmons acted with an "intent to provoke a breach of peace, or under such circumstances" his conduct could have led "to a breach of the peace." *See id*. "An overview of recent Mississippi case law on this element reveals that [breach of the peace] requires some level of threat by the arrestee." *Crosby v. Bell*, 2015 WL 4496589, *5 (S.D. Miss. July 23, 2015); *See S.M.K.S. v. Youth Court of Union Cnty.*, 155 So.3d 747, 750 (Miss. 2015) (finding breach of the peace element met because officers at the scene described the situation as 'very hostile' and as 'mass chaos'); *Matthews v. City of Madison*, 143 So.3d 579, 585 (Miss. Ct. App.2013) (upholding arrest and conviction for disorderly conduct where the officer arrested the defendant for refusing to refrain from using his cell phone); *Sendelwick v. State*, 101 So. 3d 734, 740–41 (Miss. Ct. App.2012) (finding that arrest for disorderly conduct was justified because of an arrestee's "combative conduct"). These cases highlight a wide spectrum of conduct that constitutes disorderly conduct in Mississippi.

It is important, moreover, to note a key distinction in the plain language of the statute that informs the Court's analysis of probable cause here. The disorderly conduct statute does not require there to be an actual "breach of the peace" occurring at the time of the arrest. Instead, it only requires that the suspect have the "intent to breach the peace" or that such conduct "could lead to a breach of the peace". *See* Miss. Code Ann. §97-35-7(1). This statute, in effect, equips the officer with a proactive tool to avoid a potential breach of the peace. Meaning the statute as written

requires the officer to make a judgment call—based on the information available to him or her at the time— as to whether the suspect's conduct might lead to a breach of the peace. In light of this finding, the Court looks to the facts surrounding the night in question because the Fifth Circuit made clear that "probable cause exists when the facts available at the time of the arrest would support a reasonable person's belief that an offense has been, or is being, committed." *See Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994). Probable cause is an objective standard. *Id*.

The Defendants argue that the Court should find a breach of the peace based on the following circumstances: (1) the officers were investigating a fleeing vehicle in which Simmons was a passenger, (2) their investigation was being conducted at nighttime at a person's home they were not familiar with, (3) they were outnumbered by three adult males, (4) there was a loose dog on the premises, (5) Simmons questioned the officers investigation techniques in addition to not physically complying with their instructions, (6) there was a beer bottle on the ground next to Simmons, and (7) the officers smelled marijuana.

Many of these assertions fall short. First, there is not sufficient evidence to prove that the vehicle was fleeing or whether the occupants were even aware of the patrol car's presence. Nor is there testimony that the driver noticed the patrol car especially considering that the officer did not initiate his blue lights. Also, the video evidence reveals that the officers chose to approach an empty black Honda without proof that it was the same car that Officer Fair initially pursued. The occupants had already exited the vehicle and entered the home by the time the officers arrived to the house. In addition, there is no evidence that the loose dog was vicious or presented a threat to the officers. And while Simmons did question the officers' investigation techniques, "arrest made pursuant to mere verbal insubordination does not provide the actual probable cause under the Fourth Amendment." *Hill*, 482 U.S. at 461, 107 S. Ct. 2502.

Further, even if a beer bottle was on the ground next to Simmons, there is no credible evidence that he was either intoxicated or attempted to use the bottle as a weapon against the officers. Finally, one officer acknowledged that he smelled marijuana but the homeowner, not Simmons, admitted to the use of the marijuana. After that admission, the officer told him that he could not be arrested for that. Thus, because none of these assertions has any connectivity to Simmons' conduct, they cannot serve as a basis of probable cause for Simmons' arrest.

Nonetheless, the officers were outnumbered by the three men during the nighttime. These facts viewed in concert with Simmons' continuous disregard for the officers' commands are a sufficient basis to conclude that his conduct could have led to a breach of the peace. An objective view of the circumstance supports this conclusion. Importantly, the Court now has the benefit of knowing that Simmons did not take any steps to harm the officers. If the Court makes a conclusion based on knowledge that the officers did not have at that time of the arrest, it would undoubtedly be a misapplication of the objective standard. The only information available to the officers at that time was that they were outnumbered, it was dark outside, and one of the men continued to disobey their commands in particular when they were distracted while reviewing the dash camera footage. Because the law burdens the officers with predicting whether the suspect has the intent to breach the peace or their conduct might lead to a breach, the Court must lend substantial weight to a reasonable officers' judgment as to whether Simmons' conduct could have led to a breach of the peace or whether he had intent to breach the peace. Thus, the Court finds that a reasonable officer could have concluded that Simmons' conduct was violative of the disorderly conduct statute.

Even if the Officers were incorrect in assuming that Simmons' conduct could lead to a breach a peace, their assumption was at most a mistaken judgment which is covered by qualified immunity. *See Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L. Ed. 2d 589 (1991)

9

(stating that "the qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.").

The Court finds that a reasonable officer could have believed that probable cause existed in light of these facts. Consequently, there is no Fourth Amendment violation for the purposes of Qualified Immunity.

The Plaintiff also claims that the officers violated his First Amendment right "to the extent, if any, that the arrest was caused by exercise of First Amendment Rights." *See* Plaintiff's Complaint [1]. But further analysis of the First Amendment claim does not change the Court's conclusion today because "if probable cause exists, any argument that the arrestee's speech as opposed to [his] criminal conduct was the motivation for [his] arrest must fail, no matter how clearly that speech may be protected by the First Amendment." *See Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008); *citing Whren v. United States*, 517 U.S. 806, 814, 116 S.Ct. 1769, 135 L. Ed. 2d 89 (1996).

Based on a finding that probable cause existed and thus no constitutional violation occured, the Court finds no need to proceed to the "clearly established law" analysis. *See Russell v. Altom*, 546 Fed. Appx. 432, 436 (5th Cir. 2013) (unpublished).

II.     *Municipality Liability*

After the Plaintiff amended his Complaint [1] to add the Town of Shannon, Mississippi as a defendant, the Municipality filed a Supplemental Motion to Dismiss [23] seeking dismissal of the Plaintiffs' section 1983 claims against it. The Plaintiff asserted in his Amended Complaint [21] that the Town is responsible for the alleged constitutional violations because it failed to instruct the officers not to arrest persons for exercising their First Amendment right and for failing to instruct the officers not to violate the Fourth Amendment when arresting an individual for

disorderly conduct. As the Fifth Circuit aptly found in *Victoria W. v. Larpenter*, in order to establish a Section 1983 claim against a municipality, there must be "a deprivation of a right secured by federal law." 369 F.3d 475, 482 (5th Cir. 2004). Therefore, because this Court found above that no constitutional violation occurred, the Plaintiff cannot meet his burden of establishing a deprivation of his federal rights secured by federal law, and therefore cannot state a viable claim of liability against the Town of Shannon.

*Conclusion*

For all the reasons discussed above, the Officers' Motion for Summary Judgment [9] is GRANTED. Simmons claims against Officers' Fair and Barnett are dismissed *with prejudice*. The Municipalities' Supplemental Motion to Dismiss [23] is GRANTED and the claims against Town of Shannon are dismissed *with prejudice*. THIS CASE IS CLOSED.

SO ORDERED this, the 31st day of March, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT COURT